UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ARMANDO ALMENDAREZ, et al., ) | |
| ) | CASE NO. C13-0086-MAT |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | ORDER RE: PLAINTIFFS' MOTIONS |
| BNSF RAILWAY COMPANY, ) | FOR SUMMARY JUDGMENT |
| ) | |
| Defendants. ) | |
| _____ ) | |

INTRODUCTION

Plaintiffs Almendarez, Crosby, Drecksel, Gillings, Geiss, King, Leonard, Reaser, Winfrey, and Herron, the latter of whom is represented by separate counsel, filed Motions for Summary Judgment in this matter pursuant to the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109. (Dkts. 54 & 55.) Plaintiffs seek partial summary judgment on the issue of whether defendant BNSF Railway Company (BNSF) violated FRSA, and request that the current trial dates be maintained for a jury determination as to damages. Alternatively, plaintiffs request that the Court enter an order stating that any and all material facts not genuinely in dispute be

ORDER RE:
PENDING MOTIONS
PAGE -1

treated as established in this case. Fed. R. Civ. P. 56(g).

BNSF opposes the motions for summary judgment, asserting the existence of genuine disputes as to material facts requiring a jury's determination as to witness credibility. (Dkt. 57.) BNSF alternatively argues that, even if the Court were to reach a credibility determination, plaintiffs fail to establish a FRSA violation. BNSF also requests that the Court decline to accept the invitation to establish undisputed facts on summary judgment.

Now, having considered the motions, opposition, and remainder of the record, the Court finds and concludes that the pending motions must be DENIED based on the existence of genuine disputes as to material facts precluding a ruling on summary judgment. The Court also declines to reach a determination as to undisputed facts.

## BACKGROUND

BNSF is a railroad carrier engaged in interstate commerce and subject to FRSA. BNSF is required by federal regulation to report employee injuries of certain severity to the Federal Railroad Administration (hereinafter "reportable injuries"), and to refrain from harassment or intimidation calculated to discourage or prevent employees from reporting injuries. 49 C.F.R. §§ 225.11, 225.33. BNSF, accordingly, requires its employees to report all injuries, regardless of severity. (*See* Dkt. 1, ¶9; Dkt. 9, ¶11.)

At all times pertinent to this matter, BNSF employed plaintiffs as part of a construction group or "gang" under the supervision of construction roadmaster Kasie Holle. The gang was based in Interbay, Seattle, Washington and assigned to build railroad track in and around the Seattle area as part of the Sound Transit commuter project.

The incident giving rise to this matter occurred during a morning meeting conducted by

Holle on or about January 14, 2010.  Plaintiffs aver that, during the meeting, Holle addressed the injury record of the gang, deemed it excessive in comparison to other track construction groups, and advised that the gang would be abolished if any additional injuries occurred.  (*See*, *e.g.*, Dkt. 54-20 (Ex. R).)  Plaintiffs further contend that, after one or more members of the group vocalized concern that their jobs had been threatened, Holle responded – "don't shoot the messenger" – leading plaintiffs to believe the threat came from above Holle and at the direction of BNSF.  (*Id*.)  Plaintiffs point to a variety of factors, including issues of seniority and the minimal work opportunities available at that time, as relevant to their concern as to the abolishment of the gang.  (*See* Dkt. 54 at 3.)   They also assert the existence and relevance of a BNSF program providing cash bonuses to management employees based on the number of reportable injuries.  (*Id*. at 4.)

BNSF refutes plaintiffs' depiction of the statements made by Holle during the morning meeting.  Holle attests that the gang's project, already extended, was scheduled to end on February 1, 2010, and that she had been working on securing a new project.  (*See* Dkt. 58.)  She confirms that the gang had sustained more injuries than any track group in the division.  (*Id*.)  Holle maintains that, during the meeting, she discussed how the gang could be safer and prevent injuries, asked how it could learn from work groups with fewer injuries, and "speculated that groups that work safer may have a competitive edge for getting new work" in an effort to help the gang "get every advantage for finding new work as a group by improving [its] safety."  (*Id*., ¶13.)  Holle further maintains that, after some individuals raised concerns, she explained she was not making a threat, that the goal was to prevent injuries from occurring, and that, if an injury did occur, it must be reported.  (*Id*., ¶¶14-15.)  Holle denies saying "don't

ORDER RE:
PENDING MOTIONS
PAGE -3

shoot the messenger," that the group would be abolished if another injury was reported, or that she was told as such by management. (*Id*., ¶¶16-20.)

No further incidents are at issue in this matter. It is undisputed, for example, that the construction gang began work on a new project in Everett following cessation of work at the Interbay location. (*Id*., ¶29.)

On July 9, 2010, plaintiffs filed a complaint with the United States Department of Labor, Occupational Safety and Health Administration (OSHA), alleging violation of FRSA through Holle's threat that their jobs would be abolished if they reported any additional injuries. (Dkt. 54-22 (Ex. T).) In a position statement offered in response to the complaint, BNSF stated that plaintiffs' work group "suffered injuries at a rate three times as high" as similar groups; that the "'tipping point'" occurred after the tenth and eleventh injuries sustained in December 2009; that it was well known the group would be abolished at the conclusion of the Sound Transit project in February 2010; and that Holle conducted an "employee discussion regarding the unsafe behaviors leading to the rash of recent injuries[]" and explained the "unremarkable principle" that, "in the competition for additional work, the safest work groups are often selected for obvious reasons." (Dkt. 54-23 (Ex. U) at 3-4.) BNSF also otherwise denied the allegations raised by plaintiffs in their complaint, including the contention that Holle "made the comment 'don't shoot the messenger'." (*Id*. at 5.)

A Regional Administrator for OSHA, in a January 11, 2012 decision, dismissed the complaint upon concluding plaintiffs "suffered no adverse actions." (Dkt. 54-24 (Ex. V).) On Appeal, an Administrative Law Judge (ALJ) found the Regional Administrator "viewed 'adverse action' too narrowly, given the text of the Secretary's regulation that reaches beyond

ORDER RE:
PENDING MOTIONS
PAGE -4

losses of cash, benefits, or seniority, to bar intimidation, threats, restraints, and coercion." (Dkt. 54-25 (Ex. W) at 3.) The ALJ found the allegations merited a trial and set a pre-trial schedule. Plaintiffs opted, instead, to seek relief in this Court.

## DISCUSSION

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in

the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original). Also, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Likewise, the nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

A.  <u>FRSA Claim</u>

FRSA serves "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. Pursuant to FRSA, a railroad carrier "may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part," to an employee's engagement in various protected activities, including "notify[ing], or attempt[ing] to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee[.]" § 20109(a)(4). Implementing regulations clarify that discriminatory acts in violation of FRSA include, but are not limited to, "intimidating,

threatening, restraining, coercing, blacklisting, or disciplining an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done[.]" 29 C.F.R. § 1982.102(b)(1).

FRSA explicitly incorporates by reference the rules and procedures applicable to Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21") whistleblower cases. 49 U.S.C. § 20109(d)(2)(A) (actions "shall be governed under the rules and procedures set forth in [49 U.S.C. § 42121(b)]," including burdens of proof); *Araujo v. New Jersey Trans. Rail Op., Inc.*, 708 F.3d 152, 157 (3d Cir. 2013).[1] As such, the Court employs a two-part, burden-shifting test in analyzing a FRSA claim. *Araujo*, 708 F.3d at 157-58 ("Unquestionably, AIR-21 burden-shifting applies to cases brought under the FRSA.").

Plaintiffs bear the initial burden of showing, by a preponderance of the evidence, that: (1) they engaged in a protected activity (or were perceived to have engaged or to be about to engage in protected activity); (2) the railroad carrier knew they engaged in the protected activity (or perceived the employees to have engaged or to be about to engage in protected activity); (3) they suffered an adverse action; and (4) the protected activity (or perception thereof) was a contributing factor in the adverse action. 49 U.S.C. § 20109(d)(2)(A)(i) (citing 49 U.S.C. § 42121(b)); 29 C.F.R. § 1982.104(e)(1)-(3); *Araujo*, 708 F.3d at 157. If plaintiffs establish this prima facie claim, the burden shifts to the railroad carrier to demonstrate "by clear and convincing evidence that it would have taken the same adverse action in the absence of the

---

[1] The Third Circuit's decision in *Araujo* is the lone federal appellate decision addressing FRSA subsequent to 2007 amendments adding anti-retaliation measures to the statute.

ORDER RE:
PENDING MOTIONS
PAGE -7

complainant's protected activity." 29 C.F.R. § 1982.104(e)(4); *see also* 49 U.S.C. § 20109 (d)(2)(A)(i) (citing 49 U.S.C. § 42121(b)); *Araujo*, 708 F.3d at 157-60.

As plaintiffs observe, and as recently found by the Third Circuit, the burden-shifting framework applicable to FRSA cases "is much more protective of plaintiff-employees" and "much easier for a plaintiff to satisfy than the *McDonnell Douglas* standard[]" applied in employment discrimination cases. *Araujo*, 708 F.3d at 158-59 (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). That is, a plaintiff in a FRSA case need only show that protected activity is a "contributory factor" in a retaliatory action, "not the sole or even predominant cause." *Id*. at 158-60. As explained in *Araujo*, the adoption of this framework reflects a purposeful intent to be protective of plaintiff-employees in retaliation cases relating to injury reporting. *Id*. at 159-60 (recounting history surrounding 2007 amendments to FRSA as including consideration of allegations that "'railroad safety management programs sometimes either subtly or overtly intimidate employees from reporting on-the-job injuries[,]'" "a long history of underreporting incidents and accidents" in the industry, and that "one of the reasons that pressure is put on railroad employees not to report injuries is the compensation system; some railroads base supervisor compensation, in part, on the number of employees under their supervision that report injuries to the Federal railroad Administration.")

Although reserving its right to dispute plaintiffs' satisfaction of the first and second elements of their prima facie claim, BNSF does not here raise a challenge to plaintiffs' contentions that they engaged in protected activity or that BNSF had knowledge they engaged in such activity. (Dkt. 57 at 6, n.2.) The Court, as such, focuses only on the disputed third and

fourth elements of the prima facie claim.

1.  Adverse Action:

Plaintiffs argue the preponderance of the evidence demonstrates Holle took the adverse action of threatening plaintiffs with job abolishment in the January 2010 meeting. *See* 49 U.S.C. § 20109(a)(4) (prohibiting discrimination relating to the reporting of injuries) and 29 C.F.R. § 1982.102(b)(1) (defining discrimination as including, but not limited to, threats, intimidation, restraint, coercion, blacklisting, or discipline). Plaintiffs allege Holle addressed the injury record of the gang, deemed it excessive in comparison to other groups, advised the gang would be abolished if any additional injuries occurred, and, after complaints were voiced, responded: "don't shoot the messenger." (*See*, *e.g.*, Dkt. 54-20 (Ex. R).) They point to support for their claim in the form of, *inter alia*, signed statements from plaintiffs and gang foreman Jose Campos dated in January 2010 (Dkts. 54-20 (Ex. R) and 54-21 (Ex. S)), deposition testimony of plaintiffs, Holle, and non-party witnesses (Exs. B-P at Dkts. 54 & 56), and the position statement submitted to OSHA by BNSF (Dkt. 54-23 (Ex. U)). Plaintiffs also provide and cite to administrative decisions as supporting the conclusion that a threat, standing alone, constitutes an adverse action within the meaning of FRSA. (Dkts. 54-26 (Ex. X) and 54-27 (Ex. Y); *see also* Dkt. 54 at 17-19.)

BNSF asserts the existence of genuine issues of material fact as to the statements made by Holle during the meeting in question. It points to the declaration from Holle denying she said "don't shoot the messenger" or that the group would be abolished if another injury was reported, and depicting her statements in the meeting as addressing issues of safety and injury prevention, directed towards securing further work for the group, and including her speculation

ORDER RE:
PENDING MOTIONS
PAGE -9

that groups with better safety records had a competitive advantage in securing new work, as well as her clarification that all injuries must be reported. (Dkt. 58.) BNSF maintains the existence of disputes of fact necessitating a jury determination as to witness credibility and, as such, precluding summary judgment. *See*, *e.g.*, *Nichik v. N.Y.C. Transit Authority*, No. 10-CV-5260, 2013 U.S. Dist. LEXIS 4692 at *11-12 (E.D.N.Y. Jan. 11, 2013) (finding reasonable jurors could disagree as to whether "disciplinary reinstructions," among other actions, constituted adverse employment actions under the National Transit Systems Security Act).

BNSF denies that the statements attested to by Holle, or the cases relied upon by plaintiffs, establish the existence of any adverse action. (*See* Dkt. 57 at 8-9.) Also, citing various administrative decisions, BNSF stresses the absence of any "effect on the terms and conditions" of plaintiffs' employment, noting plaintiffs suffered no actual consequences as a result of the perceived threat. (*Id*. at 6, 9-10.)

The Court first notes the absence of any binding or otherwise persuasive authority cited for the proposition that a prima facie claim under FRSA requires a showing of both an adverse action and a resulting effect on the terms and conditions of employment. Neither the statute, the implementing regulations, nor the single federal appellate decision addressing FRSA's anti-retaliation provisions, *see Araujo*, 708 F.3d at 157, reflect or provide any support for the existence of this additional burden. The Court, as such, limits its consideration to the FRSA burdens as set forth above. Further, having considered those burdens, the Court finds this matter inappropriate for a determination on summary judgment.

Plaintiffs' claim rests entirely on statements made by Holle during the morning meeting

on or about January 14, 2010. Plaintiffs maintain that the evidence – from both their own witnesses and from Holle – clearly demonstrates a threat in violation of FRSA. However, BNSF presents a different depiction of the statements made and not made by Holle during that meeting. Contrary to plaintiffs' contentions, BNSF's opposition is not conclusory or otherwise insufficiently supported. Instead, support for BNSF's position can be found in the portions of Holle's deposition testimony provided by plaintiffs (Dkt. 56-3 (Ex. L)), Holle's sworn declaration (Dkt. 58), and the position statement from BNSF (Dkt. 54-23 (Ex. U)). Also, while plaintiffs appear to assert contradictions between Holle's deposition testimony and her declaration (*see* Dkt. 60 at 2-3), they fail to sufficiently identify or explain the significance of any such contradictions.

At the summary judgment stage, the Court may not weigh the evidence or make credibility determinations, because those are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. *See also Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) ("And because summary judgment is not a paper trial, the district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe.") Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). Also, the Court must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Therefore, "[i]f, as to any given material fact, evidence produced by the moving party . . . conflicts with evidence produced by the nonmoving party . . . ," the Court "must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013)

(citing *Leslie v. Grupo ICA*, 198 F.3d 1152, 1157-58 (9th Cir. 1999)).

In this case, construing all reasonable inferences in favor of BNSF, the non-moving party, the Court finds genuine issues of material fact in dispute as to the statements made by Holle at the morning meeting and the question of whether her statements constituted a threat in violation of FRSA. These disputes necessitate a jury's determination as to witness credibility and preclude a ruling on summary judgment.

    2.    <u>Contributing Factor</u>:

The fourth element of a prima facie claim under FRSA requires a showing that the protected activity, or perception of that activity, was a contributing factor in the adverse action. BNSF avers an absence of any showing there was a threat, intimidation, or discrimination of some kind. It argues that, because there was no unfavorable action, plaintiffs cannot prove a protected activity contributed to such action. However, as stated above, the Court finds disputes of material fact precluding a determination as to the existence of an adverse action. The Court, as such, declines to reach a determination on the question of whether a protected activity was a contributing factor in any adverse action.

B.    <u>Determination as to Undisputed Facts</u>

Pursuant to Federal Rule of Civil Procedure 56(g), if the Court declines to grant the relief requested by a motion for summary judgment, "it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." Plaintiffs, as an alternative to their request for summary judgment, ask that the Court issue an order establishing as fact any and all issues it finds undisputed. BNSF opposes the request.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 323). Plaintiffs here fail to identify any specific facts associated with their request for an order pursuant to Rule 56(g). Given the lack of sufficient specificity, as well as the material factual disputes addressed above, the Court declines to enter an order identifying material facts not genuinely in dispute.

## CONCLUSION

For the reasons set forth above, the Court finds disputed issues of material fact precluding a grant of summary judgment and declines to enter an order pursuant to Rule 56(g). Accordingly, plaintiffs' motions for summary judgment (Dkts. 54 & 55) are herein DENIED. The Clerk shall send a copy of this Order to the parties.

DATED this 10th day of March, 2014.

Mary Alice Theiler
Chief United States Magistrate Judge